The last case for argument, case number 24-1244 from the Eastern District of Arkansas, United States v. Terrell Moses. Mr. Green. Morning, Your Honor. Morning. We're ready. May it please the court, opposing counsel, respective opposing counsel. And the court appreciates your service under the Criminal Justice Act. Thank you, Judge. I appreciate you. This case, factually the case starts with, there's a call to the Conway police, Conway, Arkansas police, that there's some suspicious activity in a car parked on the parking lot outside some apartment buildings. A police officer responds. He walks up to the car, taps on the window. The driver, who is my client, lowers the window to talk to the officer and this smell of marijuana, a strong smell of marijuana kind of billows out of there. The officer tells them that he doesn't have a problem with the marijuana, but when he asks my client to step out of the car, he starts to handcuff him. And so they have a struggle and my client, the officer's camera is knocked off of his body. Nothing comes off of my client. Nothing is shaken loose from my client. He runs. The officer chases him. And I give him credit for foot speed, my client, because he definitely outdistanced the officer pretty quickly. And then he went over a privacy fence. And then the officer didn't try that. He went around and then my client came back over the privacy fence and the officer lost sight of him. Well, he had run past some bushes and after the chase and after my client was caught, then the officers went back and they said they traced what they called his flight path. And in a bush there were two pistols. Well, to back up a little bit, there were two people in the car, in my client's car, that he was in the driver's seat while this passenger, he also started running and he went a different direction from my client, a kind of oblong direction from my client. And he dropped a clip or a magazine. I've always called him a clip. But he drops this magazine on the parking lot and it clatters and everything. And so they recover that later. And that man's name was Orlando Tony. And so there were two motions in limine. Counsel, do we know from the record whether Mr. Tony's flight path was such that he could not have tossed the gun into the bush? Not definitely. The officer lost sight. I mean, and this is something that I tried to bring out with the officer Mano, the one, the pursuing officer. It's an apartment building and there's these breezeways that go between. And it wouldn't have been that difficult to run through that breezeway. And you see the officer going that way and then dump the guns. And the clip that Mr. Tony dropped actually was the correct clip for one of the pistols. So the only person that had any connection to those guns was Mr. Tony. And then they put on this fingerprint. I think this case comes down to the testimony, the testimony regarding the flight path of the two individuals and the testimony as to who was in the area where the guns were found. Yes. Yes, Your Honor. And the officer, he's not trying to use a big word correctly. He's not ubiquitous. He's not everywhere at one time. There's no security camera. So it's not conclusive that he just, I mean, he could have not seen Mr. Tony. He lost sight of my client for a while. And, you know, he didn't see everything that happened by the bush. And just the fact that somebody travels, walks past a place, all the cases that the government relies on, Adams, the other ones, they actually see the person with the gun except for the one, it's a hyphenated name, Green-Boltman. But then that, it's a shotgun and it's wrapped up in the man's Chicago Cubs jacket. He has a Chicago Cubs stocking hat on. So it's pretty clear that he had construction, constructive possession of it. But there's no evidence like that here. And, in fact, we made a point of there was no fingerprints. Was there a demonstrative exhibit at trial of the pads? I do not recall one, Judge. I remember the government putting on the layout of the property. And if I'm wrong, Mr. Cruz, I know you'll be glad to correct me. But, no, there was just nothing connecting my client to the guns other than that he ran past there. And a point I want to make is that these cases, the Ramos case that I relied upon, where the court held that under the exact circumstances that they did not permit this parole waiver in, and also about the constructive possession of the pistol, all those factors go to admissibility. And so then, if it's not admissible, and then you let it in, and then you tell the jury all the factors for admissibility, it's almost like putting the jury in the position of a judge. And this judge, I think she's brilliant, but the jurors are not Judge Baker. They haven't been to law school, in fact, a good law school. They haven't been to law school, and it's not their determination to make. And so they end up being cautioned, oh, you can only consider this for that, and it's very unlikely that it even had an effect on them, the limiting instruction. And so if we take away... We have rejected many arguments about you shouldn't assume the jury is able to obey instructions. That's just not a circuit law. No, it's not, but I think in this case it's a reasonable argument because the instruction just repeats the factors from the Ramos case where the evidence should not have been admitted. So all we're talking about is admissibility. We're not talking about this is a warning about credibility or any of those standard jury instructions. It's just a repeat of the decision of this Court that that evidence should not have even been admitted. And I'd like to reserve some time for rebuttal unless you have any other... Because of the 403 analysis. Yes, Your Honor, absolutely. The 403 analysis is often... District judges frequently try to ameliorate the risk of unfair prejudice with a limiting instruction. And so it's not just a pure admissibility question. I mean, the ultimate question, I suppose, is admissibility. But the real question is the 404B. It's got to be unfair prejudice when cured by the district court's limiting instruction. And the attempt to cure it... I mean, it was probative. Yeah, it was probative, but it's also propensity evidence. Well, so is everything often. But it's just like... And Judge Baker said this. She said this is sheer propensity evidence. All you're saying is that, well, he had a gun in the past, which was a misdemeanor, and now in this felony case, he's being consistent with his bad character, and he's a bad guy, and he had a gun back in the past, he was a bad guy, and he's a bad guy now and has a gun. I'll abuse all my time. If you have any more questions, I will do my best to try and answer them. Thank you. Thank you, Judge. Mr. Cruz. Yes, Your Honor. And I'm probably going to be too loud rather than too quiet, so I may put this back a little bit. I may please the court. I am Jordan Cruz, and I represent the United States. The government's asking this court to affirm the jury's verdict. In the light most favorable to the verdict, two guns found in the exclusive pathway of a fleeing felon, coupled with a specific admission to the parole board and parole board documents, and a valid 404B evidence is sufficient to support the jury's verdict. Mr. Cruz, I think Mr. Green is correct that the evidence in this case is thinner than any of our other cases. There are no eyewitnesses. Nobody saw something dropped or removed or picked up. There's no gun containers. There's nothing other than some testimony. We also have the unusual fact that the clip or magazine that was dropped by Mr. Tony matches the gun that is in the bush that's alleged to have been in the actual possession of the defendant. Is that – is there – does the fact that the magazine doesn't match the – or the fact that the magazine does match the gun that's attributed to the defendant preclude a reasonable jury from finding beyond a reasonable doubt that Moses was the – in actual possession rather than Tony? Yes, Your Honor, that's a great question. And I would say that the fact that the magazine fits the gun is actually beneficial to the government. And I'll say why. There was a discussion and a question about demonstrative acts, right? There's no dispute. Officer rolls up to the car, interacts with the car, window rolls down a little bit, pulls the people out. There's a scuffle. Tony runs that way. Moses runs the other. Mano testified at trial and was cross-examined about this fact, about the foot chase. And he testifies under oath that there was no period of time where Tony could have ran back across from the other building, from the area on the other side of the building or through the catwalk to get to the area and drop the gun. So that was the testimony. So that's really the key to this case, isn't it? I think that is a huge part of the key to the case, Your Honor. I also think it's very relevant that the admission of the parole board or in the parole board documents, Your Honor. So there was a lot of discussion about Ramos, and that was my second point, and I'll just jump right into it, Your Honor. This court has had recent cases about parole board admissions. The government contends that WALRAF is the law, that these types of admissions and this type of evidence is admissible. And then this court, in a fracture opinion about sufficiency of the evidence, Judge Kelly and DICTA made some comments about the type of evidence that was presented and some 403 concerns that Judge Kelly had with this type of evidence. This court's even said later on in Daniels that that was DICTA. But moving on. You know, Daniels is completely distinguishable. A hearing wasn't waived in Daniels. The voluntary admissions were at the hearing after the warning. I think it is distinguishable, but I think the fact that's relevant is that the court is saying that those Kelly factors are DICTA. So I agree with the court 100% that that case came later, and it's about the defendant's testimony before the parole board rather than the admission of the parole documents. You know, citing to us that one of our prior cases was DICTA and a second prior case said it was DICTA, that doesn't do much. Okay. And I lost track of my thought here, so I apologize. In reference to Ramos, which is mentioned here, the court read Ramos. It was part of the briefs that the defense submitted, and there's a long discussion about Ramos in the trial record, Your Honor. And when the court is determining whether to admit this evidence and it does its required 403 analysis, the court considers Judge Kelly's concerns in Ramos. It considers that the defendant in a parole hearing doesn't have the full panoply of rights. That was one of Judge Kelly's concerns, that the burden of proof is different and some various other distinctions. And in Ramos, there was a very general admission of the parole documents in this four-month period this defendant possessed guns. That's a very different fact pattern than what's in Moses. Moses is very, very, very specific in the admissions and the allegations. This specific gun, this specific serial number, this specific day, the defendant violated the laws. It was this law, it was felon of possession, it was on this day. Again, that's very specific. And to address the issue of imprimatur of the document itself, Judge Baker had us redact a huge section of it, removing judicial signatures, seals, and things that would bolster the credibility of that document. Again, and maybe most importantly, Judge Baker does what is important when you're trying to remove unfair prejudice, is she gave a limiting instruction and told the jury all the aspects that might make someone admit to this kind of evidence. It lays it out for the jury and says there's lesser burden of proof, you don't necessarily have an attorney at this time, and you need to consider that when you determine what way, if any, to give this evidence. And I think that instruction was crucial with the determination of the parole admission. So to circle back, I do think that this isn't less than Armstrong. I think the big difference in Armstrong was the container to hold the cross-body bag that was in there. But I do think- That's physical evidence. Sure. But I do think this isn't purely a circumstantial case because there is an admission. And I do think the fact that they ran in different directions and the testimony was that the person couldn't come back without being seen by the officer, and it defies common sense. I mean, officers pursuing your co-defendant, you don't turn around when you're running this way and then run back in the pathway where the officer was. Are there any other questions from the court? And I'll secede my two minutes. Very good. Thank you. Thank you. I'll give you half a minute for rebuttal, Mr. Green. I think we're on top of your arguments. Thank you. As far as the waiver, there are a lot of reasons. First of all, the way this probation officer went to talk to my client, he said he had an entire packet of documents. And he said that the document that my client signed was complex. My client didn't have a lawyer. That's why you have a lawyer to explain things. I'm a criminal defense lawyer. I've never bought a house without talking to my best friend who's a real estate lawyer. I just, you know, and that's the situation that my client was in. Now, Walroth was decided before Ramos, and Walroth is very conclusory. It just sounds like two lines that just says, okay, what the judge did was okay. But Ramos goes through all these factors. I mean, there's like six or seven of the factors in Ramos that say why the waiver should not have been admitted. And I would argue that all of those apply in this case, and the supposed admission. And one last comment, and then I'll step back, is that signing this waiver, and we all know, I talk to young people sometimes, they don't know what monopoly is. But in monopoly, there's this get out of jail free card. That's what it was for my client. When he signed that, he was going to get to go home in six months. If he went to the hearing, he was going to be in prison another whole year. So there are any number of reasons he may have signed that. And then it did have official imprimatur on it, if I said the word right. It did have that because it's obviously a government document, and it's obviously somewhat complicated. And if you redact part of it, it still doesn't take away the fact that it's an official document. And that's all I have to say, and I appreciate you giving me the extra time. Very good. The case has been well briefed and argued. We'll take it under advisement. Does that complete the arguments? It does, Your Honor. Very good. The court will be adjourned.